IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NELSON CLAUDIO CASTRO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | NO. 05-1591 |
| SOCIAL SECURITY ADMINISTRATION | : | |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL　　　　　　　　　　　　　　　　　　　　　　　　　　　June 19, 2006
UNITED STATES MAGISTRATE JUDGE

**I.　INTRODUCTION**

　　　This is an action brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for supplemental security income (SSI) under Title XVI of the Social Security Act. Presently before this Court are the parties' pleadings, including Plaintiff's objections to specific findings of the Administrative Law Judge (ALJ) in the Commissioner's decision, and the Commissioner's response thereto (as Ordered by me on December 8, 2005).[1]

　　　On January 26, 2006, counsel presented oral argument.

---

[1] Consistent with an earlier Procedural Order, the Record, a Complaint, an Answer and Cross-Motions for Summary Judgment have been filed in this action.

**II. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on April 23, 1966. *Administrative Record*[2] at 79, 114, 330. He attended Agripina Ceda High School in Puerto Rico where he completed the tenth grade. Record at 111. He does not communicate in English. Record at 17. He has past relevant work as an agricultural worker and general laborer, which was identified by the Vocational Expert (VE) as unskilled, medium to heavy work. Record at 342-343. Plaintiff alleges an onset disability date of August 22, 2000, arguing that he is disabled as a result of diabetes, foot problems, asthma, and depression. Record at 17.

Plaintiff filed an application for SSI benefits on January 9, 2003. Record at 79-82, 114, 117. The Commissioner denied Plaintiff's claim initially. Following the denial at the initial level, Plaintiff requested a hearing before an ALJ. A hearing was held on May 4, 2004, before ALJ Edward T. Morriss in Reading, Pennsylvania. In a June 25, 2004 Decision, the ALJ determined Plaintiff to be ineligible for SSI benefits. Record at 16-22.

Plaintiff sought review by the Appeals Council. On February 4, 2005, the Appeals Council denied Plaintiff's request for review. Record at 5-8.

On April 6, 2005, Plaintiff filed this action alleging that the Commissioner's final decision denying SSI benefits is not supported by substantial evidence.

---

[2] Hereinafter the "Record".

**III. SOCIAL SECURITY DISABILITY LAW**

    **A. <u>Disability Determination</u>**

The Social Security Act authorizes several classes of disability benefits, including SSI benefits. In order to qualify for SSI benefits, a person must be "disabled" under the Social Security Act and the accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period.". *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (*quoting Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); 42 U.S.C. § 423(d)(1) (1982). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)92)(A).

The Commissioner's regulations provide a five (5) step sequential evaluation process for determining whether or not a claimant is under a disability. 20 C.F.R. § 404.1520. Step one states that an individual who is working will not be found to be disabled regardless of medical findings. 20 C.F.R. § 404.1520(b). Step two involves evaluating severe impairments. 20 C.F.R. § 404.1520(c). Step three requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. 20 C.F.R. § 404.1520(d). Step four states that if an individual is capable of performing past relevant work, he

will not be found to be disabled. 20 C.F.R. § 404.1520(e). Step five requires that if an individual cannot perform past relevant work, other factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. § 404.1520(f). *See e.g., Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Plummer*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F.Supp. 297, 301 (E.D.Pa. 1980), *aff'd.* 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is not the role of the Court to re-weigh the evidence of Record or substitute its own conclusions for that of the ALJ. *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Secretary's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. *See Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the

ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

## IV. THE ALJ'S DECISION

The ALJ received medical evidence, heard Plaintiff's testimony, and received testimony from a VE. An interpreter was present. Proceeding through the five-step evaluation process, the ALJ determined that Plaintiff is a younger individual who attended school through the tenth grade in Puerto Rico and does not communicate in English. Record at 17. His past work experience included employment as a harvest worker and general laborer. *Id.* The ALJ stated:

> The medical record shows that the claimant's medical history is significant for insulin dependent diabetes and amputation of the second and fifth toes on his right foot. He was hospitalized between November 28, 2002 and December 6, 2002 for diabetic ketoacidosis and left lower extremity cellulitis and plantar abscess [Record at 130-156]. Subsequent treatment records from St. Joseph Family Practice indicates that the claimant's diabetes was poorly controlled secondary to noncompliance with treatment and that he was hospitalized for several days in April 2003 for a diabetic ulcer on his right foot. The claimant was subsequently treated at the Center for Advanced Wound Care through July 2003 with diabetic footwear, ultrasound therapy three times a week, and debridement as needed [Record at 157-163, 178-185, 186-260]. In October 2003, the claimant was treated for acute bronchitis and subsequent records indicate that testing showed that he was reactive airway disease and that this condition is responding well to medication. In December 2003, the claimant reported that he had been doing a lot of walking and was having some pain and swelling in the right foot. X-rays of both ankles were normal, an x-ray of the left foot showed some flexion of the toes consistent with hammertoe deformity. When seen for followup on January 13, 2004, the claimant reported that he was doing well without complaints and had walked to the office without difficulty. However, subsequent records show that the claimant's diabetes is still poorly controlled and that he was recently referred back [to] the wound care clinic for treatment of an infection on his left great toe

>[Record at186-260, 261-306]. Although there is no documentation of signs, symptoms or treatment for a mental impairment, the claimant testified that he became depressed secondary to pain and was treated for depression for 3 months. Record at 18.

The ALJ found that the medical evidence indicates that Plaintiff has diabetes, asthma, and depression impairments that are "severe" within the meaning of the Regulations but are not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id.* He further stated:

>The medical evidence does not establish that the claimant has an inability to ambulate effectively; chronic pulmonary insufficiency; frequent asthma attacks, significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station; acidosis occurring at least once every two months; or diabetic retinopathy. Therefore, the requirements of 1.02A, 3.02, 3.03, or 9.08 are not met. The medical evidence also fails to establish that the claimant's depression is associated with signs or symptoms meeting the diagnostic "A" criteria of listing 12.04. Further, there is no indication that this impairment results in the degree of functional limitation required to meet the "B" criteria of this listing. In this regard, I find the claimant's depression results in mild restriction in activities of daily living, mild difficulty with social functioning, mild to moderate difficulty with concentration, persistence or pace, and no episodes of decompensation. There is also no evidence showing that any of the "C" criteria are met. These conclusions are based on the claimant's statements, which do not indicate significant or persistent psychological symptoms or limitations, and lack of significant mental health signs or treatment. Further, no medical source designated by the Commissioner to make equivalency findings has indicated the claimant's condition medically equals a listed impairment. *Id.*

The ALJ concluded that Mr. Castro retains the residual functional capacity to do light work, but he requires a sit/stand option and needs to avoid concentrated exposure to dust and fumes. Further, he has mild to moderate limitations in concentration and attention due to pain and depression As a result, Plaintiff has the residual functional capacity to do a limited range of light

6

work. Record at 20. (Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.. *Id.*) There are a significant number of limited light work activity jobs in the regional and national economies that Plaintiff could perform. Record at 22.

The ALJ found Mr. Castro "somewhat credible".

> [T]he record does not support a finding that he is incapable of performing all work activity. While the claimant alleges the above problems, he reported in the record that he has no side effects from medication, has no problems taking care of his personal needs, is able to climb 10 steps twice a day, can walk 1-2 blocks, can sit for 30 minutes, can lift 20 pounds, and is able to walk without assistance [Record at 86-118]. Further, there is no indication that he reported any side effects from medication or sitting difficulties due to waist pain to his treating sources. In addition, there is no indication of significant or persistent ambulatory difficulties in the medical records, even with the foot ulcers. There is no documentation of significant or persistent problems or asthma attacks since starting medication in October 2003 despite the fact the claimant continues to smoke [Record at 178-306]. The claimant only takes Tylenol, which does not support the severity of pain alleged. While the claimant's capacity for work is reduced, the record does not support greater limitations than those included in the residual functional capacity. Accordingly, his statements were not given significant weight. Record at 19.

## V. DISCUSSION

Plaintiff argues that the ALJ erred in finding that he has the residual functional capacity for a limited range of light work and thus not disabled. *See* Plaintiff's Brief in Support of Opposition as to Administrative Judge's Numbered Findings 5, 10, 11, and 12 at 1.[3]

---

[3] Hereinafter "Plaintiff's Brief".

A. **Finding Number Five**

The ALJ found:

> The claimant has the following residual functional capacity: light work but requires a sit/stand option, needs to avoid concentrated exposure to dust and fumes, and has mild to moderate limitations in concentration and attention due to pain and depression. Thus, the claimant has the residual functional capacity for a limited range of light work. Record at 22.

Mr. Castro believes that due to his maladies he does not retain the residual functional capacity to perform even a limited range of light work. He feels that the record reveals numerous overnight hospitalizations and a host of hospital visits and interventions. He is of the opinion that this medical history establishes that his chronic condition makes him unable to ambulate effectively. *See* Plaintiff's Brief at 3-7.

On the other hand, the Commissioner opines that Plaintiff's residual functional capacity assessment ascertained by the ALJ is very restrictive in light of limited medical evidence. *See* Defendant's Statement in Response to Plaintiff's Statement of Disputed Facts at 5.[4]

Though it is true that the record reveals overnight hospitalizations, they occurred on only three different occasions. Between November 28, 2002, and December 6, 2002, Mr. Castro was hospitalized for diabetic ketoacidosis and left lower extremity cellulitis and plantar abscess. Upon his discharge, he was markedly improved and was sent home in stable condition. Record at 141. His diabetic ketoacidosis was no longer evident, and his left foot continued to improve. *Id.* Plaintiff was also admitted to St. Joseph Medical Center on April 2, 2003, and remained until April 5, 2003, for a diabetic right foot ulcer. Record at 201. After debridement, the wound looked good with viable

---

[4]Hereinafter "Defendant's Brief".

edges, and Mr. Castro was stable at the time of discharge. Record at 202. Over a year later, on June 20, 2004, he again spent the day at St. Joseph Medical Center, with right foot pain. Record at 309. An MRI of his foot was taken on June 21, 2004; he underwent a PICC line placement on June 24, 2004, and was released in stable condition. Record at 314-315.

Two emergency room visits are noted in the record. On November 28, 2003, Mr. Castro came to the St. Joseph Medical Center ER complaining of difficulty breathing. Record at 230-234. Perhaps if he had refrained from smoking while wearing a Nicorette patch, as he had been instructed (Record at 252), he would not have had trouble breathing. At a second trip to the ER a week later for breathing problems, he was found not to be in acute distress. He was told to stay away from smoking and use a vaporizer or humidifier. Record at 241-245.

Plaintiff made a series of visits to The Center for Advanced Wound Care for care of his right foot. Record at 213-229. At the conclusion of his nine visits, Joseph P. Cavorsi, M.D. pronounced "Mr. Claudio is healed." Record at 229.

Progress Notes in the Record of general treatment appointments discuss routine monitoring of his diabetes and medications. He was also referred for weekly diabetic teaching. Record at 158-163, 180-185, 246-263.

Mr. Castro has received no treatment for mental health issues. Additionally, nowhere in the record is there an indication that any physician placed any functional restrictions on him.

Mr. Castro complains of many problems. The record, however, reveals that many of Plaintiff's difficulties arose as a result of his own non-compliance with his doctors' instructions.[5]

---

[5] Mr. Castro points out that a state agency physician opined in his assessment that Plaintiff's difficulty with compliance may not be all his fault. Record at 166. This opinion was not given much weight by the ALJ. There is no evidence that any other medical personnel shared the same belief as this physician.

Record at 131, 137, 183, 198, 309, 313. His refusal to follow directions in regard to his smoking has already been noted.

Regarding his non-compliance with his prescribed treatment for diabetes mellitus, Mr. Castro tries to demonstrate that some causes of his non-compliance were not his fault. There were times, he states, when he did not take his insulin because he ran out of it. He further tells of using his sister's insulin because he had not found a physician since his arrival in the continental United States (Record at 131), and he also claims, at another time, to have run out of insulin sooner than his insurance would allow for its refill. He also relates that he lost his glucometer. Record at 248. Initially, one wonders about the health of Mr. Castro's sister and his concern for her well-being, or lack thereof, when he takes her insulin. Further, the record gives no indication that Plaintiff was denied treatment due to an insurance problem; in fact, Progress Notes in the record show that his doctor rectified any insulin/glucometer/syringe problem that was brought to his attention.

Mr. Castro looks to the independent medical evaluation done by the state agency physician (Record at 164-171) which he claims the ALJ completely dismissed. *See* Plaintiff's Brief at 9-10. The ALJ speaks of this evidence:

> As for the medical opinion evidence, a state agency physician completed an assessment that indicates the claimant is limited to sedentary work [Record at 164-172]. This assessment appears to be an understatement of the claimant's abilities, as the medical and other evidence indicates that he walks without difficulty without assistance and could perform sitting and standing/walking for 8 hours in a work environment where he has an option to sit or stand. Further, there are no problems with the upper extremities to the support sedentary lifting restrictions and the claimant himself reported that he is able to lift 20 pounds. Therefore, this opinion was not given significant weight. Record at 19.

The ALJ explained his reasoning concerning this evaluation when he noted that Mr. Castro, himself,

acknowledged the ability to lift/carry twenty pounds (Record at 90) and that there was no evidence of an upper extremity problem. Mr. Castro explained his problems with sitting and/or standing for prolonged periods at his Hearing.

> Q. Okay. If you had the opportunity to get a job where you would not have to lift more than 10 pounds and you could perform it in a seated position, but you would have to do it on a full-time basis, would your condition allow you to perform that kind of job?
>
> A. No, because I can't be seated for long periods of time nor standing for long periods of time.
>
> Q. And what happens if you're seated or standing for too long?
>
> A. If I'm standing for long periods of time it starts hurting right here and I have to sort of bend over until the pain –
>
> Q. Okay. He's pointing to his right foot or right ankle?
>
> A. Yes.
>
> Q. Okay. And then what's the problem with sitting for too long?
>
> A. My waist would hurt me a lot. Also I have a wound on my right foot. Record at 335.

The ALJ noted in his decision that "[t]he claimant's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations". Record at 21. Acknowledging this, the ALJ addressed Mr. Castro's specific complaints and concluded that he had the residual functional capacity for a limited range of light work. The evidence clearly supports the ALJ's finding regarding Plaintiff's residual functional capacity.

### B. Finding Number Ten

Mr. Castro disputes the tenth finding of the ALJ, which reads: "[t]he claimant has the

residual functional capacity to perform a significant range of light work (20 C.F.R. § 416.967)". He again refers to the state agency physician who limited Plaintiff's capacity to sedentary work. As the ALJ noted in his decision,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods. Record at 20.

Mr. Castro admitted that he is able to lift twenty pounds. The medical evidence indicates that his gait is unremarkable, in spite of his foot problems. Record at 162, 216, 247-248. He also reported incidents of doing a lot of walking, and he even had occasion to walk to his doctor's office. Record at 247, 248, 265-266. He explained to the ALJ how he feels if he must sit or stand for an extended period of time. Looking at all of these issues, the ALJ modified the requirements of light work to accommodate Mr. Castro with a sit/stand option. One could also point out that light work with a sit/stand option more clearly addresses Plaintiff's restrictions against lengthy sitting, standing or walking than does the performance of sedentary work. There is substantial evidence to support a finding that a significant range of light work is appropriate for Mr. Castro.

### C. <u>Finding Number Eleven</u>

Mr. Castro's third disputed finding is number eleven:

> Although the claimant's exertional limitations do not allow him to

> perform the full range of light work, using Medical-Vocational Rule 202.16 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples include small parts assembler, 706-687.014 (2410 jobs regionally and 470,100 nationwide), cafeteria attendant, 311-677.010 (310 jobs regionally and 120,350 nationwide) and produce sorter, 529-687.186 (130 jobs regionally and 304,150 nationwide). Record at 22.

Plaintiff is of the opinion that he has met his burden of proving that his impairments prevent him from working at the above jobs. *See* Plaintiff's Brief at 11.

The VE testified at Plaintiff's hearing as follows:

> Q. Mr. Kester, have you studied the record made available to you regarding the Claimant's vocational history?
>
> A. Yes, I have, Your Honor.
>
> Q. Is there anything else you need me to ask Mr. Castro to help you in testifying today?
>
> A. I don't believe so.
>
> Q. Okay. In your testimony today, please let me know if there are any conflicts with the information contained in the *Dictionary of Occupational Titles* and the *Selected Characteristics of Occupations*. Having reviewed the Claimant's vocational history, would you describe his prior work, identifying the job, exertional level and skill level of each job performed within the past 15 years.
>
> A. Yes, Your Honor. The evidence of record indicates that the Claimant was a harvest worker, field crop, which is defined as heavy work, Your Honor, at an unskilled level with an SVP of 1. It is a DOT code of 404.687-014. And as we heard today, Your Honor, there is evidence of him performing the duties of the general laborer which is defined in the DOT as medium work with construction. It is a DOT code of 2 – I'm sorry – 922.687-058. Again that's at an unskilled level, Your Honor, with an SVP of 2. And that's the evidence of record that I –
>
> Q. Okay. Assume I find the Claimant is 38 years old and has a 10[th]

grade education. Assume I find he can perform light work. Assume he is unable to communicate in the English language and assume I find he requires a sit/stand option. Assume further he needs to avoid concentrations of dust and fumes and assume further he would have mild to moderate limitations in concentration and attention due to pain and depression. With those limitations would there be any jobs available he could perform?

A. Yes, I believe there are, Your Honor.

A. Okay. Could you give me some examples?

A. Certainly. I believe the person you defined in your hypothetical could perform the duties of small parts assembler, small product – sorry – assembler, which is a DOT code of 706.684-022. In the regional economy, Your Honor, there are 2,140 such jobs and nationally there are over 470,100 such jobs. I believe the individual could perform the duties of a cafeteria attendant, which is a DOT code of 311.677-010. There are in the regional area 310 such jobs and nationally 120,350. Likewise I believe the individual could perform the duties of a sorter, agricultural produce, which would be a DOT code of 529.687-186. There are 130 such jobs regionally and nationally there is 304,150, Your Honor.

Q. Okay. Assume the same elements as the first hypothetical except I would find moderate to severe limitations in concentration and attention. With that increased degree of limitation could he perform any of the jobs you just identified?

A. No, Your Honor.

Q. Would there be any other jobs you could identify he could perform under that hypothetical?

A. No. Record at 342-344.

The VE read the record, noted the jobs previously held by Mr. Castro, took into account his difficulties with prolonged sitting, standing and walking, and stated that someone with Plaintiff's background and limitations could perform a variety of jobs.

No evidence has been presented that would lead one to believe that Mr. Castro could not do

the specific jobs identified by the VE. On the contrary, substantial evidence exists in the record, as noted repeatedly above, to support the VE's assessment of the types of jobs appropriate for Plaintiff and to support the ALJ's agreement with this evaluation.

### D. Finding Number Twelve

Plaintiff's final disputed finding is number twelve:

> The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)). Record at 22.

Mr. Castro simply disputes the ALJ's finding that he is not disabled. For all the reasons set forth above, I find substantial evidence to support the ALJ's finding that Plaintiff is not disabled.

### III. RECOMMENDATION

Consistent with the above discussion, it is recommended that Claimant's Motion for Summary Judgment be DENIED and the Commissioner's Motion for Summary Judgment be GRANTED.

  S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE